**Robert J. BORERI, et al.,
Plaintiffs, Appellees,**

v.

**FIAT S.P.A., Defendant, Appellant.**

**No. 84–1774.**

United States Court of Appeals,
First Circuit.

Argued March 7, 1985.
Decided May 30, 1985.

Richard L. Edwards, Boston, Mass., with whom Richard P. Campbell and Campbell & Associates Professional Corp., Boston, Mass., were on brief for defendant, appellant.

Lawrence Moniz, Taunton, Mass., with whom Francis M. O'Boy and O'Boy & Moniz, P.C., Taunton, Mass., were on brief for plaintiffs, appellees.

Before TORRUELLA and ALDRICH, Circuit Judges, and SELYA,* District Judge.

SELYA, District Judge.

This proceeding has its roots in a traffic accident which occurred on August 12, 1979 in Freetown, Massachusetts. On that date, Robert J. Boreri was severely injured when his 1972 Fiat 128AF station wagon left the road. Contending that the proximate cause of the mishap was the failure of the vehicle's steering mechanism, Boreri brought this product liability suit on August 9, 1982 in the United States District Court for the District of Massachusetts.[1] We review in some detail the factual/procedural backdrop against which this appeal is played out before attempting to frame the issues.

## I. BACKGROUND.

Boreri's complaint, which asserted claims sounding in negligence, breach of warran-

---

* Of the District of Rhode Island, sitting by designation.

**1.** Boreri's wife (Janice) and his son (Kurt), each of whom claimed derivatively for loss of consortium, joined as parties plaintiff below and appear before us as appellees. Inasmuch as their rights are wholly dependent on the merit of Boreri's position, we treat the appeal as if Boreri was the sole plaintiff and we refer to him singularly as the appellee. But, it should be remarked that our decision applies equally to all.

ty, and strict liability, was sued out against both Fiat S.p.A. (Fiat), the manufacturer of his vehicle, and Fiat Motors of North America, Inc. (Fiat N.A.), Fiat's distributor in the United States. Fiat is an Italian corporation with its principal place of business in Turin, Italy. Fiat N.A., which is not a party to this appeal, is a New York corporation headquartered in Montvale, New Jersey.

On November 22, 1982, Boreri filed and served a set of interrogatories to be answered by Fiat in accordance with Fed.R. Civ.P. 33. But, the attention of the parties was soon diverted from this initiative. On February 4, 1983, Fiat moved to dismiss the action against it for lack of personal jurisdiction, arguing that it was an Italian corporation wholly distinct from Fiat N.A., doing no business in Massachusetts, and not susceptible to the amenities of a Massachusetts forum. Fiat also moved to quash service of the summons and complaint, claiming a failure of compliance with the provisions of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, done November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163 (1969). The district court denied Fiat's motion to dismiss on July 25, 1983 and ordered the parties to resolve any dispute anent service on that basis. That decree, in time, rekindled the parties' interest in the dormant interrogatories; on December 23, 1983, they moved jointly to extend Fiat's time to "answer or otherwise respond" until February 1, 1984. (The court below never ruled on this motion.)

On the appointed date (February 1), Fiat served no answers; instead, it filed a broadbrush motion to strike the interrogatories, on the ground that they had been promulgated without regard to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, done March 18, 1970, 23 U.S.T. 2555, T.I. A.S. No. 7444, codified at 28 U.S.C. §§ 1781 *et seq.* (Hague Convention). The appellant requested, inter alia, an order that it be exempted from future discovery except in strict accordance with the Hague Conven-

tion. The motion was unaccompanied by any affidavits, documentary proffers, or source material referable to the stance of the Italian government. The district court's attention was not directed to any specific provision of foreign law. *See* Fed. R.Civ.P. 44.1.

We digress for a moment. The Hague Convention "was designed to deal with the frustration of American lawyers seeking evidence in foreign countries and foreign nations' perceptions of excessively broad discovery from America." Note, *The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters: The Exclusive and Mandatory Procedures for Discovery Abroad,* 132 U.Pa.L.Rev. 1461, 1465 (1984). In the United States in this modern era, civil pretrial discovery is not only extensive, but is in the first instance conducted by the parties themselves. Such a concept is alien to the ways of most civil law countries, where the taking of all evidence is exclusively a function of the court. In those countries, discovery American-style is often considered an affront to the nation's judicial sovereignty.

The Hague Convention represented an attempt to bridge this gap between the American and civil law methods of obtaining discovery. It outlines three methods of securing evidence, i.e., (i) letters of request (Articles 1–14), (ii) taking of evidence by diplomatic officers of the forum state (Articles 15–16), and (iii) taking of evidence by duly appointed commissioners (Article 17). Under Article 23, however, signatory nations may refuse to execute any or all letters of request. Most of the member nations have imposed some restriction on the procedure; five nations, including Italy, have precluded it entirely. The United States ratified the Convention in 1972, but Italy did not do so until 1982 (and then, only with the plenary exercise of its Article 23 right).

It is in the albedo of this delicate diplomatic byplay that we return to the case at bar. On February 22, 1984, a magis-

trate of the district court, to whom the nondispositive motion to strike had been referred, see Fed.R.Civ.P. 72(a), denied the motion in its entirety. The magistrate held that the motion was untimely; that Fiat had waived its right to object both by utilizing standard pretrial discovery techniques to its own behoof (the appellant, for example, had sought to depose Boreri's expert pursuant to Fed.R.Civ.P. 26) and by moving for the aforementioned extension of time; and that use of the Hague Convention was in any event not obligatory, but was discretionary with the judicial officers of the contracting states. Noting that Fiat had failed affirmatively to demonstrate that the Italian government objected to private litigants utilizing the Federal Rules of Civil Procedure to propound interrogatories to Italian citizens who do business in the United States, the magistrate declined to impress the strictures of the Convention upon the appellee.

On March 6, 1984, Fiat moved to have the district court reconsider and set aside the magistrate's order.[2] On August 10, 1984, the district court summarily affirmed the magistrate's order denying Fiat's motion to strike, and simultaneously entered an order denying Fiat's request that it reconsider the magistrate's decision.

The instant appeal thereupon ensued.[3] Instanter, we issued an order questioning appellate jurisdiction in light of the absence of any final judgment. Fiat vouchsafed the appropriateness of our jurisdiction under 28 U.S.C. § 1291, contending that the August 10 decrees met all of the criteria required of immediately-appealable collateral orders. See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). Alternatively, Fiat requested that we treat its appeal as a petition for a writ of mandamus, thereby conferring jurisdiction under 28 U.S.C. § 1651. After full briefing upon the jurisdictional issues, we entered an order on December 3, 1984 reserving those questions for decision until the time of hearing on the merits of Fiat's appeal. Incremental briefing and oral argument followed in due course.

Inasmuch as we conclude, for the reasons which are stated below, that this appeal is not seasonably before us, we have no occasion to attempt to calibrate the delicate balance of competing concerns which must eventually be struck in determining the force and effect of the Hague Convention in civil litigation throughout our federal court system.[4]

2. This motion, it seems to us, was tantamount to an appeal of the magistrate's order. Fed.R.Civ.P. 72(a). And, it does not appear from the face of the record before us to have been taken within the ten day period allowed for appeals from a magistrate's order on a nondispositive motion. See id. But, since neither the parties nor the court below have raised any issue of timeliness, and inasmuch as the merits of the motion to strike are only peripheral to our perspective on the matters before us, see text post, we need not explore this point further.

3. On August 31, 1984, the appellant petitioned the district court to invoke the balm of 28 U.S.C. § 1292(b) and to certify its August 10 rulings as involving important and controlling questions of law as to the merits of the Hague Convention issue. The district court declined so to do. The propriety of that denial is not directly questioned in these proceedings. So, Fiat can in no way hang its jurisdictional hat on the § 1292(b) hook.

4. Though we express no opinion today on the scope of the Hague Convention, or on the inter-

play between it and the Federal Rules of Civil Procedure, we note that federal appellate tribunals have been largely silent on these issues, and that the district courts seem sharply divided. Compare Graco, Inc. v. Kremlin, Inc., 101 F.R.D. 503 (N.D.Ill.1984) (Hague Convention does not preclude court from compelling answers to written interrogatories and compliance with document requests); Murphy v. Reifenhauser KG Maschinenfabrik, 101 F.R.D. 360 (D.Vt. 1984) (principles of comity do not require United States plaintiff to use Hague Convention where defendant had already answered two sets of interrogativies, further delay would impede litigation, and Convention requests would likely be futile); Lasky v. Continental Products Corp., 569 F.Supp. 1227 (E.D.Pa.1983) (Hague Convention does not supercede the discovery provisions of the Federal Rules of Civil Procedure, especially in circumstances where it was not clear that compliance would violate German law or sovereignty) with General Electric Co. v. North Star International, Inc., No. 83 C 0838 (N.D.Ill. Feb. 21, 1984) (Plunkett, J.); Philadelphia Gear Corp. v. American Pfauter Corp., 100 F.R.D. 58

## II. COLLATERAL ORDER JURISDICTION.

Congress has empowered the federal courts of appeal to review "all final decisions of the district courts." 28 U.S.C. § 1291. Discovery orders, in the ordinary course, are not considered "final", as the litigation in conjunction with which the discovery has been sought continues to pend in the district court. *Grinnell Corp. v. Hackett*, 519 F.2d 595, 596 (1st Cir.), *cert. denied sub nom. Chamber of Commerce v. United Steelworkers of America*, 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975). Hence, such orders are not, usually, immediately appealable. *Id.* Fiat, however, argues that the exigencies of its situation warrant special treatment under the exception to the finality rule enunciated by the Court in *Cohen*, 337 U.S. at 545–47, 96 S.Ct. at 1225–26, and further explicated in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 169–172, 94 S.Ct. 2140, 2148–2150, 40 L.Ed.2d 732 (1974). To be eligible for review as a collateral order under the grace of *Cohen*, the ruling "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *see also Firestone Tire and Rubber Co. v. Risjord*, 449 U.S. 368, 375, 101 S.Ct. 669, 674, 66 L.Ed.2d 571 (1981).

In this circuit,

"(f)our requisites of appealability have been gleaned from the *Cohen* opinion and the cases applying it. The order must involve: (1) an issue essentially unrelated to the merits of the main dispute, capable of review without disrupting the main trial; (2) a complete resolution of the issue, not one that is "unfinished" or "inconclusive"; (3) a right incapable of vindication on appeal from final judgment; and (4) an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion.

*United States v. Sorren*, 605 F.2d 1211, 1213 (1st Cir.1979). *See also*, to like effect, *In re American Colonial Broadcasting Corp.*, 758 F.2d 794, 803 (1st Cir.1985); *In re San Juan Star Co.*, 662 F.2d 108, 113 (1st Cir.1981); *In re Continental Investment Corporation*, 637 F.2d 1, 4 (1st Cir. 1980). We have summarized these requisites as "separability, finality, urgency, and importance." *Continental Investment Corp.*, 637 F.2d at 5.

Refining the essence still further, we have observed that the third integer, variously referred to as urgency or irreparable harm, should be the "central focus" and perhaps even the "dispositive criterion" of appellate jurisdiction over such orders. *San Juan Star Co.*, 662 F.2d at 112. The first and second criteria—separability and finality—have been described as facets of the analysis of urgency, *e.g.*, *id.*, while the last, importance, has been said to be either another facet of that element, or simply not relevant. *Id.* *See also Continental Investment Corp.*, 637 F.2d at 6–7. Despite our expressed sense that importance "is not analytically a proper component of the collateral order test," *San Juan Star*, 662 F.2d at 113, we are mindful that the Court (although apparently never having rejected an appeal by reason of the absence of that factor alone) has continued to include importance in its formulation of the doctrine. *Firestone Tire and Rubber Co.*, 449 U.S. at 374–75, 101 S.Ct. at 673–74.

With the subtle shadings of this chiaroscuro standard in mind, we will ponder our jurisdiction to hear this appeal in light of the quadrat of enumerated benchmarks. Before proceeding to do so, however, we note—and promptly debunk—the appellant's attempt to skew the issue. Fiat ar-

(E.D.Pa.1983); and *Schroeder v. Lufthansa German Airlines*, No. 83 C 1928 (N.D.Ill. Sept. 15, 1983) (Kocoras, J.) (all holding that Hague Convention procedures must be used exclusively). And, in a forum non conveniens case, the District of Columbia Circuit has suggested, but not decided, that Convention procedures would be the only available means of obtaining certain evidence. *Pain v. United Technologies Corp.*, 637 F.2d 775, 788–90 (D.C.Cir.1980) (dictum).

gues that whether a district court may refuse to apply the Hague Convention to pretrial discovery involving a foreign litigant is an issue of first impression at the appellate level,[5] which must in and of itself be seen as collateral to the main litigation. But, this focus on the novelty and salience of the underlying issue alone is out of kilter. *Cohen* and its progeny teach that, for purposes of appellate review, the primary question to be asked is whether the circumstances surrounding the substantive question render it immediately appealable. So, in fidelity to our precedents and to the guideposts of the Court, we cannot take the easy road mapped out by the appellant; rather, we must analyze whether the posture of this appeal permits us to vault the jurisdictional hurdle.

We turn, therefore, to the four-part analysis which the caselaw demands.

### A. *Separability*

The degree of primacy to be accorded to the Hague Convention involves the rights of foreign sovereigns and their nationals, concerns of international comity, and the manner or procedure by which evidence may be obtained in a civil trial involving foreign litigants. These considerations are peripheral to the litigation itself (which involves, at bottom, questions of negligence, breach of warranty, liability, and damages). In this sense, the issues which animate this interlocutory appeal have no direct effect upon, and are not directly affected by, the triable issues in the main litigation. In light of these factors, we are willing to concede that this appeal does involve "an issue essentially unrelated to the merits of the main dispute," *Continental Investment Corp.*, 637 F.2d at 4, and that the August 10 orders are separable within the meaning of *Cohen.*

### B. *Finality*

In this circuit, finality, which customarily requires a complete decision on the issue by the trial judge, *see, e.g., San Juan Star Co.*, 662 F.2d at 112; *Continental Investment Corp.*, 637 F.2d at 5, has been found to exist when "[t]here are no further steps that the [appellant] can take to avoid imposition of the procedural requirements it seeks to challenge here." *United States v. Alcon Laboratories*, 636 F.2d 876, 885 (1st Cir.), *cert. denied*, 451 U.S. 1017, 101 S.Ct. 3005, 69 L.Ed.2d 388 (1981). Even under this fairly generous routing, Fiat's ship founders on these shoals.

First, we have reason to question, generally, the posture in which the instant appeal arises. Even a litigant which is under a perceived duty to make discovery may simply refuse to comply and seek to palliate or relieve any sanction which may ensue for that refusal. *See Grinnell Corp.*, 519 F.2d at 598. (In this case, of course, the district court has not yet ordered Fiat to answer the interrogatories; the court below has only denied the appellant's motion to strike.) As a general rule, the Court has denied review of pretrial discovery orders under the *Cohen* collateral order doctrine precisely *because* "a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." *Firestone Tire and*

---

5. We are aware that the Supreme Court has recently refused to hear appeals from two state court rulings requiring foreign nationals to provide evidence consistent with state, rather than Hague Convention, procedures. The Court would not consider either a Michigan trial court's ruling involving the conduct of depositions, *Volkswagenwerk Aktiengesellschaft v. Falzon*, — U.S. —, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984), or a New York trial court's order refusing to strike interrogatories which had been served according to New York law. *Club Mediterranee, S.A. v. Dorin*, — U.S. —, 105 S.Ct. 286, 83 L.Ed.2d 223 (1984). Both appeals were dismissed, without opinion, for want of jurisdic-

tion. Though we may not treat a dismissal for lack of jurisdiction as precedent for the issue of finality, *see Pye v. Department of Transportation of the State of Georgia*, 513 F.2d 290, 292 (5th Cir.1975), we cannot help but note that *Dorin*, at least, presented a situation strikingly similar to this one. There, as here, the foreign national defendant corporation moved to strike an entire set of interrogatories on the ground, broadly asserted, that the answers were obtainable only in France and thus required the use of Hague Convention procedures; there, as here, the nisi prius court declined to outlaw the interrogatories; and there, as here, the frustrated foreign national essayed an interlocutory appeal.

*Rubber Co.*, 449 U.S. at 377, 101 S.Ct. at 675. Following such a path, of course, enhances at least two worthwhile objectives: it erases any doubts as to "finality" and it retains the essential shape of *Cohen* as a narrow exception to the salutary rule interdicting interlocutory appeals. Since Fiat can in this manner, by following a different procedure, yet obtain a final decision which would raise more squarely the very issues which it labors to present here, the finality prong of the four-part test would, under the best of circumstances, be subject to the gravest of doubts.

The no-finality cheese is made the more binding in this instance by meticulous analysis of what has transpired to date. Fiat received these interrogatories in September, 1982. It did not raise, then or promptly thereafter, the Hague Convention issue.[6] In December of 1983, the parties filed their joint motion to extend the time within which Fiat would respond to the interrogatories. Fiat gave no contemporaneous indication that it objected to the appellee's Rule 33 initiative at all. It was not until February 1, 1984 that Fiat challenged the entire set of interrogatories, clutching the Hague Convention to its corporate breast as an impenetrable shield. At that point, the appellant chose to raise the issue in the most nonspecific way. It filed a motion to strike all of the interrogatories. Such a motion may be employed by a defendant only to obtain relief from "redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). And, such motions are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion. *See, e.g., Skadegaard v. Farrell*, 578 F.Supp. 1209, 1221 (D.N.J.1984); *Allegheny County Sanitary Authority v. United States Environmental Protection Agency*, 557 F.Supp. 419, 426 (W.D.Pa.1983) *aff'd*, 732 F.2d 1167 (3d Cir.1984); *Magnavox Co. v. APF Electronics, Inc.*, 496 F.Supp. 29, 35 (N.D.Ill.1980).

Fiat undertook no particularized examination of the interrogatories themselves; assayed no effort to provide even partial answers from sources which would not implicate information immurred on Italian soil; and made no sufficient fact-based showing that the evidence requested in the interrogatories, or some or all of it, was available only in Italy. No finger was lifted to ascertain whether some of the data was available through Fiat N.A. (although the codefendants are closely allied in their business dealings and share common counsel in this litigation). Rather than carefully using a scalpel deftly to reveal authentic Hague Convention problems which might exist, the appellant wielded a scythe with considerable abandon in a heavyhanded effort to mow down the whole field of questions. There is, in fine, no sign that the appellant sought any method for resolving the dilemma short of waving the Italian flag.[7] Inasmuch as Fiat eschewed the entire array of intermediate maneuvers which could have avoided or mitigated the perceived onus of which it now complains, the appellant falls far short of our settled requirement: it has not approached the requisite showing that "[t]here are no further steps that [it] can take to avoid imposition of the procedural requirements it seeks to challenge here." *Alcon Laboratories*, 636 F.2d at 885.

Since Fiat still possesses options to ward off harm to any rights which may be con-

---

**6.** To be sure, the parties spent much of 1983 litigating the question of in personam jurisdiction. But, the record before us does not indicate that any stay of discovery was in effect.

**7.** We are compelled to note that there has been no showing by Fiat that the Italian government itself objects to these interrogatories. Though it is unclear whether this is required (and we express no opinion on the point), the three California cases dealing with this Hague Convention issue upon which the appellant so heavily relies, all revolved around a 1973 declaration by the West German Embassy that the discovery sought was contrary to West German law and public policy. The declaration was first made in *Volkswagenwerk Aktiengesellschaft v. Superior Court of Sacramento County*, 33 Cal.App.3d 503, 109 Cal.Rptr. 219 (1973), and relied upon in *Volkswagenwerk Aktiengesellschaft v. Superior Court of Alameda County*, 123 Cal.App.3d 840, 176 Cal.Rptr. 874 (1981), and in *Pierburg GMBH & Co. KG v. Superior Court of Los Angeles County*, 137 Cal.App.3d 238, 186 Cal.Rptr. 876 (1982).

ferred on it by the Hague Convention (*e.g.,* attempting to answer some or all of the interrogatories with evidence obtainable in the United States, refusing to comply with an order—if one eventuates—which does violence to the treaty), the August 10 decrees of the district court lack the necessary finality.

### C. *Urgency*

The urgency prong of the *Cohen* test turns on "whether irreparable harm would result to appellant[ ], not from the district court order itself, but from a delay in obtaining appellate review of it." *Continental Investment Corporation,* 637 F.2d at 5. In this instance, Fiat argues that compliance with the order would accomplish the harm and that appellate review after the completion of the main litigation would be useless. This asseveration, however, misses the point: the appellant has yet to be ordered to furnish answers to interrogatories; if such an order was to be made, it is presently unclear to what extent (if at all) the framing of answers would invade the encincture of the Hague Convention;[8] if such an invasion was to be launched, it is sheer guesswork as to what sanction (if any) might be levied; and, if a sanction emerged, such an order would presumably be final and subject to immediate appeal under 28 U.S.C. § 1291.[9] *See Firestone Tire and Rubber Co.,* 449 U.S. at 376, 101 S.Ct. at 674. *See also* text *post* at 18–19. And in this manner, Fiat may yet legitimately secure appellate review of its ostensible Hague Convention rights in the context of a final ruling, without being required to surrender them first. Denying review at this point simply does not leave the parties "powerless to avert the mischief of the order." *Perlman v. United*

*States,* 247 U.S. 7, 13, 38 S.Ct. 417, 419, 62 L.Ed. 950 (1918). *See also Grinnell Corp.,* 519 F.2d at 598. Nor does it inexorably result in any irretrievable loss of the appellant's rights.

This court is not unaware of the paradox thus created. Though disdaining to hear Fiat's substantive jeremiad now, we may yet be required to hear it anon, in the context of, say, an appeal from a contempt citation. The operative word, however, is "may": so many "ifs" dot the landscape that such a prediction can only be woven of the gossamer strands of vaticination, conjecture, surmise, and speculation. As previously indicated, there has been no showing that the parties, themselves, may not be able to resolve any conflict between the appellee's desire for information and the appellant's asserted rights as a foreign subject. Then, too, even in the absence of any accommodation, a fuller explication of the pertinent circumstances may reveal that no genuine impasse exists. Or, future rulings of the district court may serve to defuse the situation. Courts should not rush in where the need for them to tread is uncertain. Both patience and a due regard for the ripeness of controversies are virtues in judicial oversight. On this scumbled record, it remains entirely possible that the substantive question which Fiat urges us to reach may not, in the long run, require appellate resolution for purposes of this case (or, if it does, that it may subsequently be presented in a narrower, better ordered framework). In view of the oft-stated purpose of 28 U.S.C. § 1291 to avoid "piecemeal appellate disposition[s]," *Eisen,* 417 U.S. at 170, 94 S.Ct. at 2149, the putative urgency anent this appeal, beset as it is with myriad contingencies, is much more

---

**8.** The interrogatories themselves belie the dirge which Fiat so plaintively hums. Some of them appear patently not to encroach upon the precincts of the Hague Convention (*e.g.,* Nos. 1, 2, 21, 22, 23). Some seek information which may or may not be available locally (*e.g.,* Nos. 3, 14). Others are likely susceptible to response by use of the United States files of Fiat N.A. (*e.g.,* Nos. 27, 28). We should not be expected, on this flimsy a record, to search out the needle in the Hague Convention haystack.

**9.** The appellee has argued before us that Fiat, by its conduct and its voluntary resort to the discovery devices of the Federal Rules, has waived any right to fall back upon the Hague Convention. We do not in any way shrug off or foreclose that argument for whatever utility it may have in future proceedings. We simply do not reach it here.

apparent than real. Even if the appellant's present fears prove to be more than horrible imaginings, that prospect alone is not enough to circumvent the policy against scattershot review. As we have observed before, "[i]f the hardships of trial are routinely held to implicate a separate interest reviewable under the collateral order doctrine, the distinction between interlocutory and final orders would be seriously undermined, if not eliminated." *Lamphere v. Brown University*, 553 F.2d 714, 717 (1st Cir.1977). And, should the eventuality which Fiat dreads come to pass, we doubt that the district court would threaten to enter a default judgment, thereby placing the foreign national between the devil and the deep blue sea. Rather, we see the course of prudence for a trial court, in those circumstances, as being either to issue a contempt order (which we could, without doing violence to established practices, review immediately) or to employ the prophylaxis of 28 U.S.C. § 1292(b).[10] Either way, the appellant's rights would be fully protected.

We hold, therefore, that on the most salient furculum of the *Cohen* paradigm, the appellant has fallen several leagues short of making out the requisite showing of urgency and/or irreparable harm.

### D. *Importance*

Importance, for collateral order purposes, refers to the scope of precedential value: whether the challenged ruling presents a critical question of controlling law, not theretofore definitively resolved, a decision as to which will settle the matter for the case at hand and for other cases as well. *Continental Investment Corp.*, 637 F.2d at 6. There is no doubt that the question of the proper relationship between the Hague Convention and the Federal Rules of Civil Procedure has great significance for litigants, that the authorities are divided (*see, e.g.*, n. 4, *ante* ), and that a

decision on the issue would be helpful. Yet, the fact that "importance" is one of the requisites of a collateral order suggests that "precedential value" means more than being able to derive or abstract a particular question from an amorphous set of facts. It must also require that the question be presented in such a manner that it can be decided with full regard for its overarching effect. For the reasons to which we have previously adverted, *see* text *ante* at Parts II (B)–(C), the issue has been transshipped to us on a barebones record which is woefully inadequate to allow reasoned consideration of the competing concerns of comity and fairness. Such hypoplasia inhibits the careful evaluation needed in order to resolve the central inquiry which lies at the core of Fiat's entreaty. Without some flesh on the bones, it cannot be said that a question of importance, ripe for appellate intervention, has been meaningfully generated below.

### E. *Recapitulation*

■ In summary, Fiat's attempt to force this appeal into the *Cohen* mold cannot succeed. The two most indispensable square corners—finality and urgency—are prominently absent, and even importance is far from cleancut. Only separability is present. The resultant polygon is misshapen and incomplete, with sides which trail off aimlessly into infinity. Inasmuch as *Cohen* requires that all of the requisites be met, we have no basis for asserting collateral order jurisdiction at this point in time. As the Second Circuit has noted, "[w]hile discovery orders are often 'separable from, and collateral to rights asserted in the action,' *Cohen, supra,* at 546, 69 S.Ct. at 1225, they rarely satisfy the further requisites for appealability under the collateral order doctrine." *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) v. National Caucus of Labor Com-*

---

**10.** On a properly developed record, given the present state of the decisional law, *see, e.g.*, n. 4, *ante,* there can be scant doubt but that carefully framed inquiries as to the scope and effect of the Hague Convention would constitute "difficult and pivotal questions of law not settled by controlling authority." *McGillicuddy v. Clements,* 746 F.2d 76, 76 n. 1 (1st Cir.1984). So postured, the odds are long that the case would then be an appropriate candidate for § 1292(b) certification. *See McGillicuddy, supra; In re Heddendorf,* 263 F.2d 887, 888–89 (1st Cir.1959).

*mittees,* 525 F.2d 323, 324 (2d Cir.1975). This case is but one further proof of the wisdom of that observation.

## III. MANDAMUS JURISDICTION.

We need not tarry long in weighing Fiat's plea that we should entertain its quest for present remediation under our mandamus power. Congress has authorized the federal courts to issue writs which are "necessary or appropriate in aid of their respective jurisdictions" under the All Writs Act, 28 U.S.C. § 1651(a). That currency is not profligately to be spent. The Supreme Court has cautioned that "[a]s extraordinary remedies, [writs of mandamus] are reserved for really extraordinary causes." *Will v. United States,* 389 U.S. 90, 107, 88 S.Ct. 269, 279, 19 L.Ed.2d 305 (1967).

This circuit has placed its own gloss on that caveat, noting that:

> Mandamus is not, however, a substitute for interlocutory appeal for parties attacking the court's jurisdiction: it is appropriate only when the lower court is clearly without jurisdiction and the party seeking the writ has no adequate remedy to appeal.

*Sorren,* 605 F.2d at 1215.

As we have already indicated at some length, the appellant is not without recourse, not in unavoidable danger of forfeiting its perceived rights (which rights, at bottom, are less than clear), and not unable to appeal the issues under other (more propitious) circumstances. The district court's finding that it has in personam jurisdiction over Fiat is not presently in issue and the existence of subject matter jurisdiction in this diversity action cannot be gainsaid. 28 U.S.C. § 1332.

 Fiat's plight, though doubtless uncomfortable in its own view, is totally lacking in those extraordinary attributes which would motivate us to employ "the most potent weapons in the judicial arsenal," *Will,* 389 U.S. at 107, 88 S.Ct. at 279, and we decline to treat the appellant's desultory firing of blanks as a sufficient predi-

cate for issuance of a writ of mandamus. *See Grinnell Corp.,* 519 F.2d at 598–99.

## IV. CONCLUSION.

We conclude, therefore, that this court has no jurisdiction over the district court's orders of August 10, 1984 because the same were interlocutory, and no adequate basis for the application of any recognized exception to the usual rule prohibiting intermediate appeals has been shown to exist. This being so, we have no cause prematurely to enter the Hague Convention thicket.

Fiat's appeal is, for these reasons,

*Dismissed. The action is remanded to the district court. Costs in favor of the appellees.*