# United States Court of Appeals
## For the First Circuit

No. 03-1551

TOMAS AQUINO ESPINAL-DOMINGUEZ,

Plaintiff, Appellee,

v.

COMMONWEALTH OF PUERTO RICO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Howard, Circuit Judge.

Eduardo A Vera Ramírez, with whom Eileen Landrón Guardiola and
Landrón & Vera, L.L.P., were on brief, for appellant.
Nydia María Díaz-Buxó for appellee.

December 19, 2003

**SELYA**, **Circuit Judge**.  By means of this interlocutory appeal, the Commonwealth of Puerto Rico attempts to exploit the Supreme Court's recent redefinition of the calculus of federalism. See, e.g., Rosie D. v. Swift, 310 F.3d 230, 231 (1st Cir. 2002) (noting that the Court has "tilt[ed] the scales more and more toward states' rights").  The Commonwealth's core contention is that the 1991 Civil Rights Act fails validly to abrogate the States' Eleventh Amendment immunity insofar as the Act authorizes the imposition of compensatory damages in Title VII actions against the States (and against Puerto Rico, which is considered the functional equivalent of a State for Eleventh Amendment purposes). This raises an interesting question but, as presently postured, one that falls beyond our purview.

The stumbling block is the time-tested precept that "[n]o matter how tantalizing a problem may be, a federal appellate court cannot scratch intellectual itches unless it has jurisdiction to reach them." Director, OWCP v. Bath Iron Works Corp., 853 F.2d 11, 13 (1st Cir. 1988).  In this instance, the Commonwealth's interlocutory appeal rests not on a denial of an asserted immunity from suit, but, rather, on a denial of an asserted immunity from the imposition of a certain type of money damages.  So constructed, the appeal does not satisfy the requirements of the collateral order doctrine, and, thus, does not come within the encincture of our appellate jurisdiction.  We therefore dismiss the appeal,

-2-

leaving the substantive issue raised by the Commonwealth to await end-of-case review.

## I.

## Setting the Stage

We glean the necessary facts from the plaintiff's complaint. See LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998).

The Commonwealth hired plaintiff-appellee Tomás Aquino Espinal-Domínguez, a native of the Dominican Republic, on September 7, 1988. He worked in various capacities for the Department of Natural Resources (the Department) during the next fifteen years. At that point, he was unceremoniously ousted from his employment.

The plaintiff concluded that his firing resulted from national origin discrimination and filed an administrative complaint to that effect with the Equal Employment Opportunity Commission (EEOC). The EEOC declined to pursue a full-dress investigation, instead issuing a right to sue letter. Letter in hand, the plaintiff repaired to the federal district court and sued the Commonwealth under Title VII, 42 U.S.C. §§ 2000e to 2000e-17. His complaint alleged that he had been discharged on the basis of his national origin, see id. § 2000e-2(a)(1), and prayed for reinstatement, back pay, marginal benefits, compensatory damages,

-3-

and "any other remedy in law or equity" that might be available against the Commonwealth.[1]

The Title VII claim brought the plaintiff face to face with the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This provision has been authoritatively interpreted to safeguard States from suits brought in federal court by their own citizens as well as by citizens of other States. See, e.g., Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); Rosie D., 310 F.3d at 233 n.2. This immunity can, however, be waived or abrogated by Congress under certain limited circumstances. See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Ramirez v. P.R. Fire Serv., 715 F.2d 694, 697 (1st Cir. 1983).

Despite its unique commonwealth status, Puerto Rico is treated for many juridical purposes as a State. The Eleventh

---

[1]Two features of the plaintiff's complaint deserve special mention. First, only the Commonwealth is prosecuting this appeal; thus, we omit any further reference to the Department and the several departmental officials who are named as additional defendants. Second, the complaint at one point cites 42 U.S.C. § 2000e(j), a definitional provision that deals with discrimination on the basis of religion. Since the body of the complaint contains no facts alluding either to the plaintiff's religion or to any failure to accommodate the plaintiff's religious practices, we assume that the citation is in error.

Amendment is included in this compendium and, thus, Puerto Rico is entitled to a full measure of Eleventh Amendment immunity. See, e.g., Jusino Mercado v. Comm. of Puerto Rico, 214 F.3d 34, 37 (1st Cir. 2000).

Hoisting this banner, the Commonwealth moved to dismiss the plaintiff's complaint on the ground that the Eleventh Amendment pretermitted it (at least in part). To comprehend the Commonwealth's position, it is helpful to place Title VII into an historical perspective.

Congress originally enacted Title VII as part of the Civil Rights Act of 1964. Pub. L. No. 88-352, 78 Stat. 241, 253 (1964). In 1972, it amended the law to include public employers, thus clearing the way for the prosecution of private rights of action against States that practiced discrimination. See Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, 86 Stat. 103, 103 (1972). This new right afforded only a limited set of remedies against a state defendant, mainly equitable in nature. Congress expanded the roster of remedies available against the States in 1991, adding compensatory damages to the mix. See Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, 1072 (1991) (codified at 42 U.S.C. § 1981a(a)(1)).

In this proceeding, the Commonwealth, with a bow toward the Supreme Court's decision in Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976), concedes that Title VII, in its 1972 incarnation,

constituted a valid abrogation of state sovereign immunity. See Appellant's Br. at 10-11. In line with this concession, it has not, insofar as can be gleaned from its papers, attempted to circumnavigate federal jurisdiction as to the remedies that were authorized when Fitzpatrick was decided (i.e., the remedies originally provided by the 1972 amendments to Title VII). These remedies included pecuniary damages, albeit in the form of back pay awards. See 42 U.S.C. § 2000e(5)(g)(1); see also Fitzpatrick, 427 U.S. at 452-56 (holding that a back pay award is appropriate in a Title VII case because Congress had the power to abrogate state sovereign immunity under section five of the Fourteenth Amendment); Sea Land Serv. Inc. v. Estado Libre Asociado, 588 F.2d 312, 313 n.3 (1st Cir. 1978) (discussing Fitzpatrick).

This concession perforce means that the plaintiff's complaint has opened the Eleventh Amendment portal at least part-way. The Commonwealth, however, seeks to keep the gates from opening more widely. To that end, it directs its Eleventh Amendment challenge to the availability of the nascent compensatory damages remedy. It grounds this challenge on the premise that the 1991 Civil Rights Act, which made that anodyne available against the States for the first time, fails to pass the congruence and proportionality test delineated by the Supreme Court's recent Eleventh Amendment jurisprudence. See, e.g., City of Boerne v. Flores, 521 U.S. 507, 519-20 (1997) (holding that legislation

-6-

passed pursuant to section five of the Fourteenth Amendment must exhibit "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end"). All legislation enacted pursuant to section five of the Fourteenth Amendment must pass this test in order validly to abrogate States' Eleventh Amendment immunity. Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 364 (2001).

Invoking this doctrine and noting that Congress relied upon section five in authorizing private rights of action against state defendants, the Commonwealth asserts that Congress acted outside its constitutional authority in purporting to abrogate state sovereign immunity when it amended Title VII in 1991 (and that, therefore, the Eleventh Amendment continues to protect the Commonwealth from being forced to pay compensatory damages in Title VII actions). Unimpressed by the ingenuity of this assertion, the district court summarily denied the Commonwealth's motion to dismiss. This appeal ensued.

## II.

### Appellate Jurisdiction

Even though the parties have assumed the existence of appellate jurisdiction, we enjoy no comparable luxury. Because federal courts are powerless to act in the absence of subject matter jurisdiction, we have an unflagging obligation to notice jurisdictional defects and to pursue them on our own initiative.

-7-

See Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); United States v. Horn, 29 F.3d 754, 767 (1st Cir. 1994); In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988). After all, litigants cannot confer subject matter jurisdiction on a federal court by "indolence, oversight, acquiescence, or consent." Horn, 29 F.3d at 768.

The difficulty here is that the order appealed from — the order denying the Commonwealth's motion to dismiss — does not end the case. It is, therefore, not "final." That matters because federal appellate jurisdiction in most civil actions arises out of the power to review "final decisions of the district courts of the United States." 28 U.S.C. § 1291. Although this finality principle admits of certain exceptions, the majority of them are statutory in origin. See, e.g., id. § 1292(a)(1)-(3) (establishing special rules for jurisdiction over interlocutory appeals from orders involving injunctive relief, admiralty cases, and receivership matters). None of these statutory exceptions applies here.

To be sure, the Supreme Court has glossed the finality principle, admonishing that the general requirement of finality should not be applied mechanically. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949) (suggesting that courts should give the finality principle a "practical rather than a technical construction"). This pragmatic approach has spawned a few judge-

made exceptions to the general rule. Chief among these is the so-called collateral order doctrine. Because that doctrine affords the only arguable basis for appellate jurisdiction over this appeal, we chart its contours.

Any effort to decipher the collateral order doctrine must begin with the Supreme Court's seminal opinion in Cohen. There, the Court held that an order may be appealed immediately if it "finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Id. at 546. Following the Cohen Court's lead, we have said that collaterality demands conformity to the following four requirements:

> The order must involve: (1) an issue essentially unrelated to the merits of the main dispute, capable of review without disrupting the main trial; (2) a complete resolution of the issue, not one that is "unfinished" or "inconclusive"; (3) a right incapable of vindication on appeal from final judgment; and (4) an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion.

United States v. Sorren, 605 F.2d 1211, 1213 (1st Cir. 1979). Typically, all four of these prerequisites — which we have termed "separability, finality, urgency, and importance," Recticel Foam, 859 F.2d at 1004 (citation and internal quotation marks omitted) —

-9-

must be satisfied in order to pave the way for the operation of the collateral order doctrine.  See id. at 1003-04.

A decade ago, the Supreme Court ruled that an interlocutory order denying a State's claim of Eleventh Amendment immunity from suit may be appealed immediately by way of the collateral order doctrine.  P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 141 (1993).  The State's claim that the Eleventh Amendment conferred upon it a total immunity from suit furnished the predicate for the Court's finding that the elements of the collateral order doctrine were present.  See id. at 144.  The Court reasoned as follows.  A trial court's denial of such an immunity claim is final because it conclusively determines that the State can be subjected to the coercive processes of the federal courts.  See id. at 145.  It is urgent because the principal benefit conferred by the Eleventh Amendment — an immunity from suit — will be "lost as litigation proceeds past motion practice."  Id. Third, the trial court's order involves an important legal question (the existence and extent of a "fundamental constitutional protection").  Id.  And, finally, that question has no bearing on the substantive merits of the case (and, thus, is separable).  Id.

Here, the parties' assumption that we enjoy appellate jurisdiction apparently rests on the belief that Puerto Rico Aqueduct is controlling.  We are less sanguine.  The precise question before the Puerto Rico Aqueduct Court was "whether a

district court order denying a claim by a State or a state entity to Eleventh Amendment immunity from suit in federal court may be appealed under the collateral order doctrine." Id. at 141 (emphasis supplied). The Court's affirmative answer to that question gives us appellate jurisdiction to decide — even in the absence of a final judgment — whether a State is amenable to suit in a federal court with respect to a Title VII claim. See, e.g., id.; Okruhlik v. Univ. of Ark., 255 F.3d 615, 621 (8th Cir. 2001). But that issue is not before us. Here, the Commonwealth does not assert that it is immune from a Title VII suit in federal court. Its only developed argument is that it is immune from a particular strain of damages (a remedy first made available by Congress in 1991). This fact distinguishes the case before us from Puerto Rico Aqueduct. See Mercer v. Magnant, 40 F.3d 893, 896 (7th Cir. 1994) ("The foundation for the interlocutory appeal authorized by [Puerto Rico Aqueduct] is the existence of a right not to be a litigant."). It follows inexorably that accepting appellate jurisdiction over the instant appeal would require an extension of the holding announced in Puerto Rico Aqueduct.[2]

---

[2]We recognize that it may be possible to wrench certain language in the Puerto Rico Aqueduct opinion from its contextual moorings to promote the proposition that any denial of any species of immunity is subject to immediate review. See, e.g., 506 U.S. at 147 (explaining that States "may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity"). Because indulging in such linguistic legerdemain would distort the Court's rationale, we eschew that course.

We turn, then, to the task of testing the viability of such an extension. This requires us to assess the Commonwealth's actual asseveration (that subjecting it to a claim for compensatory damages in a Title VII suit properly brought against it in a federal court is barred by the Eleventh Amendment) and to decide, applying the Cohen criteria, whether a pretrial rejection of that asseveration is subject to immediate appeal.

Of the four requirements underpinning the collateral order doctrine, urgency is perhaps the most elemental. See Recticel Foam, 859 F.2d at 1004 (terming urgency the "central focus" of the Cohen inquiry and perhaps the "dispositive criterion"); Boreri v. Fiat, S.p.A., 763 F.2d 17, 21 (1st Cir. 1985) (similar). Here, our inquiry starts — and stops — with this criterion.[3] We have equated urgency with a showing of irreparable harm. See Boreri, 763 F.2d at 21. In this instance, the Commonwealth has wholly failed to show that precluding an immediate appeal of the district court's order will result in any irreparable harm. We explain briefly.

There is a critical difference between avoiding trial, on the one hand, and limiting exposure to liability, on the other hand. The denial of a colorable claim of immunity from suit cannot effectively be reviewed after trial as the very object and purpose

_____

[3]Although not necessary for our conclusion, we note that this interlocutory appeal might well fail the finality prong of the Cohen test.

of the immunity is to protect the holder from the indignity of being subjected to the coercive processes of a judicial tribunal at the instance of a private party. See In re Ayers, 123 U.S. 443, 505 (1887); see also Pullman Constr. Indus., Inc. v. United States, 23 F.3d 1166, 1168 (7th Cir. 1994) (characterizing the Court's decision in Puerto Rico Aqueduct as protecting "a governmental body's right to avoid litigation in another sovereign's courts"). Put another way, the "ultimate justification" for applying the collateral order doctrine in cases involving state sovereign immunity "is the importance of ensuring that the States' dignitary interests can be fully vindicated." P.R. Aqueduct, 506 U.S. at 146.

This concern is not implicated when the State interposes the Eleventh Amendment not as the basis for an immunity from suit, but, rather, as a defense to one of several remedies sought by a particular plaintiff. See Thomas v. Nakatani, 309 F.3d 1203, 1207 (9th Cir. 2002) (explaining that the crucial difference between non-final orders denying immunity that are immediately appealable and non-final orders that are not is whether "the action . . . would proceed against the state whether or not it prevailed on appeal"). That scenario reflects an interest which, unlike immunity from suit, is "fully vindicable on appeal from final judgment." Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 882 (1994). That is a vastly different matter: when a State

-13-

has filed a pretrial motion invoking the Eleventh Amendment not to establish an immunity from suit but merely to afford itself a defense to a particular strain of damages, there is no reason to enswathe a denial of its motion within the collateral order doctrine. See Cherry v. Univ. of Wis. Sys. Bd. of Regents, 265 F.3d 541, 547 (7th Cir. 2001) (declining to address claim that state agency is immune from a punitive damages award on interlocutory appeal because "[a] claim of immunity to a certain class of damages" is different in kind from a claim of immunity from suit); Burns-Vidlak v. Chandler, 165 F.3d 1257, 1260-61 (9th Cir. 1999) (finding no appellate jurisdiction over State's claim that an award of punitive damages for a violation of Title II of the ADA is barred by the Eleventh Amendment because the State "concedes that it is subject to suit . . . in federal court").

Divorced from the question of whether a State can be sued at all in a federal court, the much narrower question of whether it can be held liable for a certain type of pecuniary damages is a question that adequately can be reviewed following trial. See Cherry, 265 F.3d at 547 (finding no risk of irretrievable loss and holding that a denial of a claimed immunity from punitive damages can be effectively reviewed after judgment); see generally CSX Transp., Inc. v. Kissimmee Util. Auth., 153 F.3d 1283, 1286 (11th Cir. 1998) (adjudging claims of sovereign immunity under Florida state law not subject to interlocutory review because Florida state

-14-

immunity is immunity only from damages and not from suit itself); cf. P.R. Aqueduct, 506 U.S. at 145-46 (suggesting that if the Eleventh Amendment conferred only a defense to liability, interlocutory review might not be warranted). In the ordinary case, a party who is subjected to an erroneous award of damages can remedy that error fully through an end-of-case appeal. See Swint v. Chambers County Comm'n, 514 U.S. 35, 43 (1995) (making clear that a potentially "erroneous ruling on liability may be reviewed effectively on appeal from final judgment").

That tenet is fully operative here. If the plaintiff's case goes forward and the Commonwealth is found liable for compensatory damages, it will have an ample opportunity to test the propriety of that award before it is forced to pay. Thus, the only harm that the Commonwealth stands to suffer from the unavailability of interlocutory review is an inchoate harm stemming from an erroneous but non-final ruling. That is always a risk in litigation — and not the sort of harm that warrants special solicitude. After all, "almost every pretrial or trial order might be called 'effectively unreviewable' in the sense that relief from error can never extend to rewriting history." Digital Equip., 511 U.S. at 872.

Indeed, if the harm asserted here were deemed sufficient to warrant interlocutory review, the Cohen exception would swallow the finality principle in a single gulp. That is a consummation

-15-

that ought to be avoided.  The Supreme Court repeatedly has cautioned that the collateral order doctrine constitutes only a "narrow exception" to the final judgment rule and that it "should stay that way."  Id. at 868.  There is good reason why the conditions for interlocutory appeal are stringent.  The case at bar simply does not satisfy those conditions.

The Supreme Court's decision in Behrens v. Pelletier, 516 U.S. 299 (1996), does not suggest a contrary result.  There, the Court clarified that the collateral order doctrine provides a jurisdictional hook on which to hang an immediate appeal from an order denying qualified immunity even though the case contains equitable claims against the "same" defendant.  Id. at 311-12.  That situation is readily distinguishable from the case before us.

If an action is dismissed on qualified immunity grounds, that dismissal disposes of the entire case against the defendant in his or her personal capacity.  See Scott v. Lacy, 811 F.2d 1153, 1153-54 (7th Cir. 1987) (per curiam) ("[A] public official who is a defendant in a suit [for injunctive relief] is not 'on trial' at all.  The suit seeks relief against him in his official capacity; he need not attend the trial, which will be conducted by attorneys representing the governmental body.").  Any cause of action remaining is against the defendant in his or her official capacity.  An official capacity claim is tantamount to a suit against the governmental entity, not to a suit against the individual.  See,

e.g., Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 705 (1st Cir. 1993). Thus, a successful Behrens appeal completely protects the individual from litigating on his or her own behalf; it does not function merely to eliminate certain remedies from the case whilst leaving the identities of the litigants intact.[4]

## III.

## Conclusion

We need go no further. We conclude that where, as here, a State asserts only that a singular remedy, compensatory damages, is precluded by the Eleventh Amendment, yet acknowledges that it is subject to the plaintiff's federal court suit with respect to other remedies arising as part of the same cause of action, that acknowledgment defeats any claim of entitlement to an interlocutory appeal. In such circumstances, the State must await final judgment before testing on appeal the question of what remedies may be available. Mercer, 40 F.3d at 897. Refusing to allow immediate

---

[4]In all events, the purposes served by the doctrine of qualified immunity are distinct from those served by the Eleventh Amendment. State sovereign immunity is intended primarily to "prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." In re Ayers, 123 U.S. at 505. Qualified immunity, however, is "a right to immunity from certain claims, not from litigation in general." Behrens, 516 U.S. at 312 (emphasis in original). Consequently, the purposes of qualified immunity are served fully by allowing an interlocutory appeal even when an official capacity claim will remain velivolent.

review in such instances will not render "impossible any review whatsoever."  <u>United States</u> v. <u>Ryan</u>, 402 U.S. 530, 533 (1971).

**<u>We dismiss the appeal, without prejudice, for want of appellate jurisdiction</u>**.