# United States Court of Appeals

## For the First Circuit

No. 03-2297

AMERICAN FIBER & FINISHING, INC.,
TRUSTEE OF AMERICAN FIBER & FINISHING REALTY TRUST,

Plaintiff, Appellant,

v.

TYCO HEALTHCARE GROUP, LP,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Selya, Circuit Judges.

Diane C. Tillotson, Joseph L. Bierwirth, Jr., Hemenway & Barnes, Martin E. Levin, and Stern, Shapiro, Weissberg & Garin, LP on brief and motion to dismiss for appellant.
Ben T. Clements and Clements & Clements, LLP on brief and opposition to motion for appellee.

March 29, 2004

**SELYA**, __Circuit Judge__.  This case began as a routine piece of environmental litigation.  It has morphed into what could easily pass for a law school examination question in federal civil procedure.  The tale follows.

On February 16, 2001, plaintiff-appellant American Fiber & Finishing, Inc. (AF&F), trustee of the American Fiber & Finishing Realty Trust, sued Tyco International (US), Inc. in the United States District Court for the District of Massachusetts.  In its complaint, AF&F claimed that Tyco International was liable, as a successor in interest to Kendall Company, for response costs incurred in connection with the decontamination of an industrial site in Colrain, Massachusetts.  Although AF&F asserted only state-law claims, federal jurisdiction attached based on diversity of citizenship (AF&F is a Delaware corporation that maintains its principal place of business in North Carolina and Tyco International is a Nevada corporation that maintains its principal place of business in New Hampshire) and the existence of a controversy exceeding $75,000 in amount.  See 28 U.S.C. § 1332(a)(1).

Under Fed. R. Civ. P. 15(a), a plaintiff may amend its complaint once as of right before a responsive pleading is served.  On April 2, 2001, AF&F exercised this prerogative and filed an amended complaint that dropped Tyco International as a defendant

and inserted Tyco Healthcare Group, LP in its stead.[1]  Otherwise, the amended complaint mimicked the original complaint:  AF&F asserted the same state-law claims against Tyco Healthcare that it previously had asserted against Tyco International.

The switch of parties defendant worked a subtle change in the jurisdictional calculus.  For purposes of diversity jurisdiction, a limited partnership is deemed to be a citizen of every state of which any of its general or limited partners are citizens.  Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990).  Tyco Healthcare is a Delaware limited partnership and its general partner, SWD Holding, Inc. I, is incorporated in that state.  Thus, Tyco Healthcare is deemed a citizen of Delaware for diversity purposes.  So viewed, the change in parties should have raised a red flag about a possible lack of diversity, inasmuch as Tyco Healthcare and AF&F shared Delaware citizenship.

Although this land mine is obvious in hindsight, no one questioned the district court's subject matter jurisdiction at the time.  By the same token, the use of Rule 15(a) to replace one party with another may be mildly controversial, see, e.g., Int'l Bhd. of Teamsters v. AFL-CIO, 32 F.R.D. 441, 442 (E.D. Mich. 1963)

---

[1]The record suggests that AF&F substituted Tyco Healthcare as the defendant after ascertaining that, by October of 1998, Tyco Healthcare (then known as "The Kendall Company LP") had acquired all of Kendall Company's assets and liabilities.  That information apparently led AF&F to conclude that Tyco Healthcare was Kendall's ultimate successor in interest.

(suggesting that the addition or discharge of parties is controlled by Rule 21 and that an amended pleading altering the identity of the parties therefore requires leave of court), but nobody raised that point. Indeed, Tyco Healthcare refrained from any sort of challenge to the propriety of the amended complaint, but, rather, answered it. From that point forward, the court presided over two years of pretrial discovery. On March 3, 2003, Tyco Healthcare moved for summary judgment. See Fed. R. Civ. P. 56(c). The district court granted the motion. Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 273 F. Supp. 2d 155 (D. Mass. 2003). This appeal ensued.

In short order, the character of the proceeding changed. Simultaneous with the filing of its appellate brief, AF&F moved to dismiss the appeal and to remand the case for the purpose of vacating the judgment. It asserted that, in preparing the jurisdictional statement for its appellate brief, it recognized for the first time that the parties were non-diverse and, accordingly, that the trial court lacked subject matter jurisdiction. Tyco Healthcare opposed the motion. We postponed oral argument on the appeal itself and took the motion to vacate under advisement. We turn now to the merits of that motion.

Federal courts are courts of limited jurisdiction. In the absence of jurisdiction, a court is powerless to act. Consistent with these principles, it is firmly settled that

challenges to federal subject matter jurisdiction may be raised for the first time on appeal.  See Kontrick v. Ryan, 124 S. Ct. 906, 915 (2004); Halleran v. Hoffman, 966 F.2d 45, 47 (1st Cir. 1992); see also Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").  Federal courts are expected to monitor their jurisdictional boundaries vigilantly and to guard carefully against expansion by distended judicial interpretation.  Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 17-18 (1951).  Just as a federal court cannot expand its jurisdictional horizon, parties cannot confer subject matter jurisdiction on a federal court "by indolence, oversight, acquiescence, or consent."  United States v. Horn, 29 F.3d 754, 768 (1st Cir. 1994).

In the case at hand, the parties concede that diversity is the only conceivable basis for federal subject matter jurisdiction.  The initial complaint cleared this hurdle.  The question, then, is what jurisdictional consequences attached to the replacement of Tyco International with Tyco Healthcare in AF&F's amended complaint.  On this question, the protagonists part ways.  AF&F contends that, even though it was unaware of the consequences at the time, Tyco Healthcare's arrival on the scene destroyed the requisite diversity and, thus, eliminated any vestige of federal subject matter jurisdiction.  In contrast, Tyco Healthcare

asseverates that the lack of diversity between it and AF&F did not divest the district court of jurisdiction because the original parties were diverse and the subsequent switch did not alter the fundamental nature of the action.  After careful study of this conundrum, we are persuaded that AF&F's view is correct.

We begin with the abecedarian rule that there must be complete diversity among the parties to sustain diversity jurisdiction.  See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806).  That circumstance has not existed here from the moment that AF&F made Tyco Healthcare a party to the action and simultaneously dropped Tyco International from the equation.  This appeal, therefore, appears to be a fish out of water.

Tyco Healthcare reminds us that appearances can be deceiving.  Cf. Aesop, The Wolf in Sheep's Clothing (circa 550 B.C.).  Indeed, "the rule that there must be complete diversity to sustain diversity jurisdiction is not absolute." Am. Nat'l Bank & Trust Co. v. Bailey, 750 F.2d 577, 582 (7th Cir. 1984).  For example, if the opposing parties are diverse at the moment of suit, but one of them then moves to the other's home state, diversity jurisdiction is not affected.  See, e.g., Morgan's Heirs v. Morgan, 15 U.S. (2 Wheat.) 290, 297 (1817); Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 700-01 (1st Cir. 1979).

Tyco Healthcare insists that the particular circumstances of this case — in which complete diversity existed when the action

initially was commenced and was dissipated only by the subsequent filing of an amendment to the complaint — demand a finding of continued jurisdiction. In support of this claim, Tyco Healthcare holds fast to the Supreme Court's statement that it has "consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) (per curiam). Tyco Healthcare's reliance on this statement is understandable. Read literally, it seems to suggest that the later change in the identity of parties defendant could not destroy the diversity that originally existed. But it is risky to read judicial pronouncements in a vacuum, and adding context makes it pellucid that the quoted language cannot be taken literally.

In Freeport, a gas seller brought a breach of contract action against a diverse buyer in federal court. The seller subsequently assigned its interest in the contract and sought to add the non-diverse assignee as a plaintiff under Fed. R. Civ. P. 25(c).[2] Such a procedural move is available when there is a transfer of interest after the filing of suit. See Explosives

---

[2]Fed. R. Civ. P. 25(c) provides in pertinent part:

In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

-7-

Corp. of Am. v. Garlam Enters. Corp., 817 F.2d 894, 907 (1st Cir. 1987). In a brief per curiam opinion, the Court held that diversity jurisdiction persisted, despite the introduction of a non-diverse party, because "[a] contrary rule could well have the effect of deterring normal business transactions during the pendency of what might be lengthy litigation." Freeport, 498 U.S. at 428-29.

The procedural circumstances and ratio decidendi of Freeport limit its precedential value. They make it clear that when the Court declared that "subsequent events" do not divest the district court of diversity jurisdiction, it was referring mainly to post-filing transfers of interest — not to all post-filing additions of non-diverse parties. Accordingly, we join several other courts of appeals that have read Freeport narrowly and restricted its precedential force to the precincts patrolled by Rule 25. See Estate of Alvarez v. Donaldson Co., 213 F.3d 993, 994-95 (7th Cir. 2000) (refusing to read Freeport as standing for the general proposition that once diversity jurisdiction is established it cannot be destroyed by later developments); Cobb v. Delta Exps., Inc., 186 F.3d 675, 680-81 (5th Cir. 1999) (limiting Freeport to the context of adding parties under Fed. R. Civ. P. 25); Ingram v. CSX Transp., Inc., 146 F.3d 858, 861 (11th Cir. 1998) ("Freeport does not stand for the proposition that all

additions of nondiverse parties are permissible as long as complete diversity existed at the time of commencement of the lawsuit.").

In contrast to Freeport, there was no post-filing transfer of interest in the instant case. Tyco Healthcare had acquired all of Kendall's assets and liabilities by October of 1998. See supra note 1. That was over two years before AF&F commenced this action. A finding of subject matter jurisdiction under these circumstances would allow for the easy circumvention of 28 U.S.C. § 1332(a)(1) and would expand the reach of diversity jurisdiction beyond what Congress intended. We are unwilling to give our imprimatur to so large a loophole.

We find further support for our initial impression in Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994). There, the plaintiff replaced fictitious defendants with named, non-diverse defendants after removal to federal court. Id. at 670. On appeal, we ruled that this substitution defeated diversity jurisdiction. Id. at 675. Of particular pertinence for present purposes, we rejected the plaintiff's absolutist interpretation of Freeport. See id. at 673-74. At least two other courts have taken a similar stance where, as here, a plaintiff has introduced a non-diverse defendant to an action by amending his or her complaint under Rule 15(a). See Alvarez, 213 F.3d at 995-96 (holding that the introduction of new parties destroyed the federal court's subject matter jurisdiction);

-9-

Ingram, 146 F.3d at 861-62 (similar); cf. 13B Charles A. Wright et al., Federal Practice and Procedure § 3608, at 454 (2d ed. 1984 & Supp. 2003) (explaining that parties joined under Rules 19 and 20 must independently satisfy applicable jurisdictional requirements).

The Supreme Court's opinion in Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365 (1978), confirms the notion that subject matter jurisdiction is lacking here. In Owen — a case that Freeport expressly declined to overrule, see 498 U.S. at 429 — the plaintiff amended her complaint to bring a state-law claim against a non-diverse third-party defendant who had been impleaded by the original (diverse) defendant pursuant to Fed. R. Civ. P. 14(a). Owen, 437 U.S. at 367-68. The Court found no basis for federal jurisdiction over the plaintiff's claim against the non-diverse party, explaining that:

> [I]t is clear that the [plaintiff] could not originally have brought suit in federal court naming [the non-diverse third-party defendant] and [the diverse original defendant] as codefendants, since citizens of Iowa would have been on both sides of the litigation. Yet the identical lawsuit resulted when she amended her complaint. Complete diversity was destroyed just as surely as if she had sued [the non-diverse defendant] initially. In either situation, in the plain language of the statute, the "matter in controversy" could not be "between . . . citizens of different States."

Id. at 374.

So here: it is nose-on-the-face plain that AF&F could not originally have brought suit in federal court against Tyco

-10-

Healthcare, since citizens of Delaware would have been perched on both sides of the litigation. When it amended its complaint to configure its suit in precisely that fashion, complete diversity was destroyed just as surely as if it had sued Tyco Healthcare in the first instance. As the Seventh Circuit put it, "the plaintiff was doing in two steps what, if [the plaintiff] had done it in one, would have clearly disclosed the absence of federal jurisdiction . . . ." Am. Nat'l Bank, 750 F.2d at 583. The extra step obfuscates, but does not alter, the jurisdictional calculus.

We do not pretend that the jurisdictional question is totally free from doubt. Even apart from Rule 25, some courts have found diversity jurisdiction to exist despite the introduction of a non-diverse litigant into the mix. See, e.g., Dean v. Holiday Inns, Inc., 860 F.2d 670, 671-72 (6th Cir. 1988) (finding that intervention of former attorney to litigate fee dispute within the larger case did not destroy diversity jurisdiction); Gaines v. Dixie Carriers, Inc., 434 F.2d 52, 54 (5th Cir. 1970) (per curiam) (finding that diversity jurisdiction persisted even after Rule 24(a) intervention by a non-diverse litigant); Brough v. Strathmann Supply Co., 358 F.2d 374, 375-76 (3d Cir. 1966) (finding that diversity jurisdiction endured where non-diverse minor was substituted for his diverse guardian upon reaching maturity). But most of those decisions predate the Supreme Court's opinion in Owen and all of them involve circumstances materially different from

-11-

those of the instant case. In the last analysis, we are faced with a plaintiff who belatedly ascertained that it had sued the wrong entity and proceeded to replace the only existing defendant with a non-diverse defendant. The transfer of interest that made Tyco Healthcare potentially liable occurred prior to the inception of the litigation. Thus, although an exact precedential match has proven elusive, closely related case law and general policy concerns lead us to the ineluctable conclusion that the swapping of parties defeased the court of jurisdiction.

In a final effort to salvage its case, Tyco Healthcare contends that estoppel principles should prevent AF&F from challenging subject matter jurisdiction at this late date. It finds AF&F's belated discovery that the federal courts lack jurisdiction over this matter — a discovery made after almost three years of litigation and a crushing defeat on the merits — much too convenient, and it voices concerns about manipulation. We are not without empathy for Tyco Healthcare's predicament, but its estoppel rationale is not backed by any persuasive authority. Nor would we expect it to be: diversity jurisdiction is, in general, not a matter subject to the exercise of judicial discretion. New Engl. Concrete Pipe Corp. v. D/C Sys. of New Engl., Inc., 658 F.2d 867, 874 (1st Cir. 1981). To permit the exercise of jurisdiction in this case based solely on estoppel principles would give federal courts power that Congress saw fit to deny to them, and that would

"work a wrongful extension of federal jurisdiction." Am. Fire &
Cas., 341 U.S. at 18. We therefore decline Tyco Healthcare's
invitation to use estoppel as a hook on which to hang federal
jurisdiction.

For the reasons elucidated above, we hold that the
introduction of Tyco Healthcare into this action divested the
district court of jurisdiction. That holding, however, does not
necessarily end our journey. Under certain circumstances, federal
appellate courts have the authority to dismiss non-diverse parties
to cure defects in diversity jurisdiction. See Newman-Green, Inc.
v. Alfonzo-Larrain, 490 U.S. 826, 837 (1989) (extending to courts
of appeals the power found in Fed. R. Civ. P. 21); Casas, 42 F.3d
at 678 (ordering dismissal of two non-diverse defendants in order
to restore diversity jurisdiction). The decision to dismiss
revolves largely around whether the non-diverse litigant is a
dispensable or indispensable party. See Newman, 490 U.S. at 837;
Casas, 42 F.3d at 675; see also 13B Federal Practice and Procedure,
supra § 3606, at 413-14 (explaining that "when the party whose
presence would destroy jurisdiction is not 'indispensable' it may
be possible for plaintiff to have the action dismissed as to that
individual and thereby preserve jurisdiction"); see generally Fed.
R. Civ. P. 19. In a classic battle of dueling footnotes, the
parties dispute Tyco Healthcare's proper classification as a
dispensable or indispensable party. We eschew any resolution of

-13-

this issue. When a defendant is the only defendant remaining in the action, any dismissal of it from the case would necessarily terminate the action itself. That principle obtains here.

To sum up, AF&F destroyed diversity jurisdiction when it amended its complaint and jettisoned Tyco International (a diverse party) in favor of Tyco Healthcare (a non-diverse party). Accordingly, we vacate the judgment below and remand to the district court for dismissal of the action without prejudice to its maintenance in a court of competent jurisdiction. See Fed. R. Civ. P. 41(b).

We add an eschatocol of sorts. There is admittedly something unsettling about a party bringing a case in a federal court, taking the case to final judgment, losing, and then invoking a jurisdictional defect that it created — with the result that it escapes from the judgment and returns, albeit in a different venue, to relitigate the merits. But the federal courts are courts of limited jurisdiction and their institutional interest in policing the margins of that jurisdiction is of greater concern than any perceived inequity that may exist here. We add, moreover, that although the jurisdictional fault was of AF&F's making, the shoe could have been on the other foot — AF&F might have won in the district court only to have its victory snatched away by the belated discovery of the jurisdictional snafu. That said, we think

it fair in these circumstances that costs be taxed in favor of Tyco Healthcare.

**<u>So Ordered</u>**.